IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS ZIMMERMAN
and PATRICIA ZIMMERMAN,

                               Plaintiffs,

        v.

GREG LOGEMANN, 1st RATE MORTGAGE CORP.,
GRETTA HAUN, BOARDWALK REALTY, INC.,
COUNTRYWIDE BANK, N.A., and
AMERICA'S WHOLESALE LENDER,

                               Defendants,

and

ACUITY, A Mutual Insurance Company,

                            Intervenor Defendant.

OPINION and ORDER
09-cv-210-slc

---

Plaintiffs Thomas Zimmerman's and Patricia Zimmerman allege that they were duped into accepting a home loan that they could not afford by their mortgage broker, appraiser and lenders, who falsified plaintiffs' financial information and knowingly inflated the appraisal of the property by as much as $120,000.  They bring claims under the Truth in Lending Act, the Credit Repair Organizations Act and various state laws.  Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

A number of motions are before the court, but a bit of procedural clean up is in order before addressing the substantive issues raised by these motions.  After plaintiffs filed their complaint, many of the defendants filed motions to dismiss for failure to state a claim upon which relief may be granted.  Dkt. 13 and 36.  In response to defendants' objections, plaintiffs amended their complaint, but some of the defendants moved to "strike" the new complaint, dkt. 49, 56 and 61, because plaintiffs had failed to seek leave of the court under Fed. R. Civ. P.

15(a), which is the default rule when a defendant has already filed its answer.[1]  In addition, most of the defendants attacked the amended complaint head on, arguing that plaintiffs had failed to cure the deficiencies in the original complaint.  Dkt. 51, 56, 58 and 60.

In their omnibus response to these motions, plaintiffs acknowledged their mistake and requested leave to amend.  Dkt. 78.  According to plaintiffs, all defendants except Gretta Haun[2] and Boardwalk Realty agreed to withdraw their motions to "strike" the amended complaint and their motions to dismiss the original complaint. *Id.* at 6. I will grant plaintiffs' request and deny the remaining motion to strike.  Plaintiffs who file a deficient complaint should have an opportunity to fix the problems. *Cf. Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts . . . generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint.")  Plaintiffs filed their amended complaint almost immediately after the first motion to dismiss was filed, so defendants cannot argue that there is undue delay.  (Plaintiffs were speedy enough that their amended complaint, dkt. 28, was filed *before* one of the motions to dismiss the original complaint, dkt. 36.)  Although plaintiffs should have accompanied their amended complaint with a motion under Rule 15, defendants have not identified any unfair prejudice they would suffer by granting plaintiffs leave

---

[1]  Generally, in this court's preliminary pretrial conference order, plaintiffs are given permission in advance to file an amended complaint within a certain date, but that order has not yet issued for the reasons stated in the order dated June 25, 2009.  Dkt. 62.

[2]  Plaintiffs identified this defendant as "Greta" Haun in their complaint, but all parties in their briefs use the spelling "Gretta."  I have amended the caption accordingly.

now.  This would be a difficult argument to make in light of the fact that the defendants have

filed and fully briefed a new motion to dismiss directed at the amended complaint.[3]

Because I am accepting plaintiffs' amended complaint, I will deny the motions to dismiss

the original complaint, dkt. 13 and 36, as moot.  This leaves the motions to dismiss the amended

complaint filed by (1) defendants Hahn and Boardwalk, dkt. 51; (2) defendant 1st Rate

Mortgage, dkt. 58; and (3) defendants Countrywide Bank, N.A. and America's Wholesale

Lender (AWL), dkt. 60.  Defendant 1st Rate has withdrawn its motion, dkt. 81, so I will deny

that as moot as well.

The motion filed by defendants Countrywide and AWL creates another procedural

wrinkle.  That motion is titled "Bank of America N.A. (as Successor to Countrywide Bank.

F.S.B. f/k/a Countrywide Bank, N.A.) and Countrywide Home Loans, Inc. d/b/a America's

Wholesale Lender's . . . Motion to Dismiss Plaintiffs' Amended Complaint."  Dkt. 60.  Other

than this title, Bank of America does not explain why it is making an appearance in this case;

it does not provide any documentation of its relationship with Countrywide or otherwise explain

the nature of its successor interest or why that gives it authority to act on behalf of Countrywide.

In their response brief, plaintiffs "request that Countrywide be required to provide

documentary evidence of all change of title/ownership of both mortgages since October 26, 2006

in order to pursue the Motion to Dismiss and to clarify whether it has the right to proceed in

this lawsuit."  Dkt. 78.  That request is denied.  At this point, none of the defendants has to

---

[3]     Defendants Greg Logemann and Acuity are the only exceptions.  The case is stayed as to
Logemann because he filed for bankruptcy.  11 U.S.C. § 362; dkt. 45.  Acuity is the insurer for defendants
Logemann and 1st Rate; it intervened in the case solely to obtain a declaration on its duty to defend and
indemnify.  Dkt. 20.

prove anything; certainly, no defendant has to show that it has "the right to proceed in this lawsuit." This is *plaintiffs'* lawsuit and it is ultimately their burden to ensure that they have sued the correct parties. That said, as of now, Bank of America is not a defendant. Plaintiffs did not name the bank in their complaint and the bank has not asked to intervene or to substitute its name in the caption for Countrywide's name. Until one of these things happens, I cannot treat Bank of America as a party. Because Bank of America's lawyers have made an appearance on behalf of Countrywide, I will treat their submissions as if they were filed by Countrywide. However, I will disregard any references to Bank of America in those filings.

Finally, I turn to the merits. Plaintiffs have asserted nine causes of action in their amended complaint:

> (1) violations of the Truth in Lending Act, 15 U.S.C. § 1635(a), for failing to deliver required disclosures (against defendants Countrywide and AWL);

> (2) violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679a, for making untrue statements (against defendants Logemann, 1st Rate, Countrywide and AWL);

> (3) common law fraud (against all defendants);

> (4) violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, for false and misleading statements (against all defendants);

> (5) civil conspiracy (against all defendants);

> (6) violations of Wis. Stat. ch. 458 (against defendants Haun and Boardwalk);

> (7) violations of Wis. Admin. Code ch. ATCP 127 (against defendants Logemann and 1st Rate);

> (8) violations of Wis. Stat. § 138.051 (against defendant Countrywide and AWL); and

> (9) violations of various "mortgage broker laws" (against defendants Logemann and 1st Rate).

Defendants Countrywide, AWL, Hahn and Boardwalk have moved to dismiss each of the claims that plaintiffs assert against them. As discussed further below, I am granting defendants' motions with respect to all but the claims for fraud because the amended complaint does not include the facts necessary to support the other claims.

In their amended complaint, plaintiffs fairly allege the following facts.

ALLEGATIONS OF FACT

In 2006 plaintiffs Thomas Zimmerman and Patricia Zimmerman were interested in purchasing a parcel of land in La Valle, Wisconsin, and a modular home to put on it. Defendant Greg Logemann, a mortgage loan originator broker for defendant 1st Rate Mortgage Corp., contacted plaintiffs to solicit them for a mortgage loan.

Plaintiffs provided 1st Rate and Logemann accurate information about their finances. They explained that they could not afford a monthly mortgage payment more than $1,000, inclusive of mortgage, taxes and insurance. Logemann assured plaintiffs that he could get a loan for those terms.

Defendants Logemann and 1st Rate "arranged" a construction loan of $200,000 with 8% interest for plaintiffs. However, those defendants provided false information to lenders without plaintiffs' knowledge in order to obtain the loan. The loan was "completed" in June 2006; the principle and any interest were due on March 5, 2007. In the meantime, defendant Logemann encouraged plaintiffs to move onto the property.

In September 2006, defendants Logemann and 1st Rate hired defendants Gretta Haun and Boardwalk Realty, Inc. to conduct an appraisal of the property. Defendants Haun and

Boardwalk prepared an appraisal for "the amount of the loan," even though they knew that was not the fair market value of the property.   To inflate the appraisal, defendants used "comparable" homes that were larger, conventionally constructed (plaintiffs had a modular home), in different types of neighborhoods and as far as nine miles away.   Plaintiffs' property and the "comparable" properties are shown below:

Plaintiffs' Property and Neighborhood





Appraiser's "Comparable" Properties





In October 2006, defendant Logemann told plaintiffs that their monthly mortgage payment would be approximately $1500, not including taxes and insurance.  By then, plaintiffs were already living on the property.   However, defendant Logemann assured plaintiffs that he would be able to obtain refinancing for them with lower payments by the end of 2007.

Before closing, plaintiffs did not receive a copy of the closing documents. At closing, on October 26, 2006, plaintiffs "were rushed through signing the documents and did not have time to adequately review each document." The application plaintiffs signed used an inflated figure for their income, a fact plaintiffs did not know until 2008.

Plaintiffs signed documents for two loans: (1) $172,000 through defendant AWL with 7.25% interest and a $1158 monthly payment for 30 years; and (2) $40,000 through defendant Countrywide Bank, N.A. with 9.25% interest and a $329.07 monthly payment with a balloon payment of $32,302.76 due on November 2, 2021. Plaintiffs were not informed that one of their mortgages included a prepayment penalty and a balloon payment.

Defendants Countrywide and AWL paid defendants Logemann and 1st Rate to help them originate the loan. Neither Countrywide nor AWL did anything to confirm plaintiffs' income as reported by defendants Logemann and 1st Rate.

In late 2007, plaintiffs attempted to contact defendant Logemann to refinance the loans but he did not return their phone calls. When plaintiffs went to other lenders in early 2008, they learned that defendants Logemann and 1st Rate had put false information in the application. One of the lenders asked defendants Haun and Boardwalk to conduct another appraisal of the property. In doing so, they amended their earlier appraisal from $272,400 to $247,300.[4] The lender then hired a different appraiser, who valued the property at $149,400. In light of this appraisal and plaintiffs' true income, the lender denied plaintiffs' request for refinancing.

---

[4] This allegation seems inconsistent with the previous allegation that Haun's and Boardwalk's first appraisal gave an appraisal "for the amount of the loan," which plaintiff alleges was a combination of two loans, $172,000 and $40,000. Plaintiffs do not explain this discrepancy.

OPINION

## I. Countrywide's and AWL's Motion to Dismiss

Plaintiffs assert six legal theories against these defendants: (1) Truth in Lending Act; (2) Credit Repair Organizations Act; (3) fraud; (4) conspiracy; (5) Wisconsin Deceptive Trade Practices Act; and (6) Wis. Stat. § 138.051.  In their response brief, plaintiffs withdraw their claim under Wis. Stat. § 138.051, *see* dkt. 78, at 43, so I need not consider that claim.  I discuss the remaining claims below.

### A.  Truth in Lending Act

Plaintiffs' claim is that defendants violated the Truth in Lending Act by failing to provide disclosures required by 15 U.S.C. § 1635(b) and related federal regulations.  I agree with defendants that the amended complaint does not comply with Fed. R. Civ. P. 8 with respect to such a claim.  The only allegations in plaintiffs' amended complaint related to defendants' failures under the act are in paragraph 47, in which plaintiffs allege that defendants "failed to comply with all requirements" of the "Truth-in-Lending right to cancel notice," and paragraph 55, in which they allege that defendants "failed to deliver disclosures required by the Truth in Lending Act and Regulation Z, including but not limited to a correct Notice of Right to Cancel."

The problem with these allegations is that they are simply legal conclusions; plaintiffs do not identify what defendants failed to do or disclose that was required by the act.  Even before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), it was well established that Rule 8 requires plaintiffs to tell defendants what they did wrong; they cannot just accuse defendants of violating the law. *Papasan v. Allain,* 478 U.S. 265,

286 (1986) (courts may not accept a "legal conclusion couched as a factual allegation"). Certainly, after *Twombly* and *Iqbal*, in which the Supreme Court held explicitly that district courts may not accept factual conclusions as true and that a claim must be "plausible on its face," there is no room to argue that plaintiffs' allegations are sufficient.  Plaintiffs come closest when they allege that defendants failed to provide a "correct Notice of Right to Cancel," but this is still deficient because plaintiffs fail to identify what was "incorrect" about the notice defendants did provide.

In their brief, plaintiffs argue that they do not need to be more specific in their complaint because defendants can look at the notice themselves to determine how it was deficient.  Dkt. 78, at 21-22.  But this premise of "you know what you did wrong, so I don't need to tell you," could apply to *any* factual deficiency in a complaint.  Plaintiffs' view would eviscerate Rule 8's notice requirement.

Plaintiffs also state repeatedly in their brief, with respect to this claim and others, that they pleaded claims "to the best of their current ability."  *E.g.*, dkt. 78, at 44.  This may be true, but it misses the point.  The question under Rule 8 is not simply whether the plaintiff has been assiduous in pursuing her claim.  Rather, Rule 8 requires plaintiffs to  make a "showing" that they are entitled to relief. Under *Twombly* and *Iqbal*, this means that plaintiffs must show that they have more than speculation to go on when they accuse defendants of wrongdoing; they cannot just take a stab in the dark.  *Twombly*, 544 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" success on the claim "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to

'sho[w] that the pleader is entitled to relief.'") If plaintiffs cannot even identify what defendants did wrong, then their complaint has not made the required showing.

Plaintiffs conclude their argument on this claim with a discussion of various "suspected" violations by defendants, followed by a citation to *Twombly* for the proposition that they need only show a "reasonably founded hope that the discovery process will reveal evidence" in support of their claims.   Although plaintiffs cite *Twombly* correctly, it does not help them because *Twombly* requires that the "reasonably founded hope" be demonstrated by facts *in the complaint*. Because plaintiffs do not include any facts in their complaint about any of these suspected violations, that discussion in their brief cannot save their claim.  Plaintiffs cite *Pegram v. Hedrich,* 530 U.S. 211, 229 (2000), for the proposition that a brief may be used to "clarify" allegations in a complaint, but clarifying is not the same thing as inventing.  As defendants point out, "a complaint may not be amended by briefs in opposition to a motion to dismiss."  *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009).  Accordingly, plaintiffs claim under the Truth in Lending Act must be dismissed for plaintiffs' failure to comply with Rule 8.

### B.  Credit Repair Organizations Act

Plaintiffs' claim under the Credit Repair Organizations Act is that defendants violated 15 U.S.C. § 1679b(a), which states:

No person may–

> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—

* * *

(B) any person—

(i) who has extended credit to the consumer; or

(ii) to whom the consumer has applied or is applying for an extension of credit.

Plaintiffs devote little space in their brief to this claim, but they seem to be making two arguments. First, they say that defendants "represented to the Zimmermans that they were credit worthy and qualified for the two loans, and that these loans were valid (i.e. not based on fraud)." Dkt. 78, at 26-27. This argument seems to be premised on a view that defendants "made a statement" to plaintiffs about their creditworthiness by approving their loan. (The complaint includes no allegations that Countrywide or AWL had any direct communications with plaintiffs.) Even if I accept this understanding of a "statement," such an allegation is irrelevant under the Act because the Act does not cover statements *to the consumer* but only statements *to creditors* (or potential creditors).

Plaintiffs' other argument is premised on various "factual scenarios" that plaintiffs believe could lead to liability under the act. The problem with this discussion is the same as plaintiffs' discussion of "suspected" violations of the Truth in Lending Act: plaintiffs include no allegations about any of these factual scenarios in their complaint. Accordingly, I have disregarded that part of plaintiffs' argument.

It is not clear why plaintiffs brought up so many new facts in their response brief, especially when they had just filed an amended complaint. If the reason is simple oversight, then plaintiffs may try to fix the problem with another amended complaint. However, if the reason is that plaintiffs worry that their theories are too speculative to justify placement in the

12

complaint, this is a sign that plaintiffs should not be pursuing these claims at this time. A plaintiff bringing a claim should have a factual basis that is at least good enough to satisfy Fed. R. Civ. P. 11(b), which requires a plaintiff to conduct "an inquiry reasonable under the circumstances" before filing a complaint so as to determine whether the claim is supported in the law and whether any "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See also Riley v. Vilsack*, ___ F. Supp. 2d. ___, 2009 WL 3416255, *10 (W.D. Wis. 2009) (concluding that Rule 11 provides useful guide in assessing sufficiency of complaint under Rule 8).

The Truth in Lending Act and the Credit Repair Organizations Act are the only two federal theories plaintiffs are advancing. In a footnote in their reply brief, defendants Countrywide and AWL suggest that this court lacks subject matter jurisdiction over plaintiffs' state law claims against them if the federal claims are dismissed. Dkt. 88, at 3 n.1. It is true that plaintiffs do not allege that their state citizenship is diverse from defendants under 28 U.S.C. § 1332, which means that plaintiffs must show that jurisdiction over their state law comes from supplemental jurisdiction under 28 U.S.C. § 1367. Under that statute, state law claims must be "part of the same case or controversy" as the federal claims, but this does not mean that state law claims against a particular defendant must be related to federal law claims for that same defendant. So long as plaintiffs' state law claims are part of the same case or controversy as *any* other federal claim in the case, jurisdiction exists. 28 U.S.C. § 1367(a); *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) ("[E]ven if the Hansens had not brought a single federal claim against the school district, the

district court would have had supplemental jurisdiction over the state claims against [the school district] because they constituted the same 'case or controversy' as the federal claim against codefendant Alano.)

Regardless of the disposition of plaintiffs' federal claims against these defendants, plaintiffs have a claim against defendants Logemann and 1st Rate for false statements made in violation of the Credit Repair Organizations Act, which no defendants are challenging.  Because that claim as well as all of plaintiffs' claims arise out of the same home loan, they are all part of the same case or controversy under § 1367.  *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) ("A loose factual connection between the claims is generally sufficient" to satisfy § 1367.)

### C.  Fraud

#### 1. Economic loss doctrine

Plaintiffs' fraud claims are based on a number of allegedly false statements defendants made to plaintiffs before closing on the mortgage.  In challenging this claim, defendants Countrywide and AWL haul out the familiar economic loss doctrine, which rears its head in almost any case in Wisconsin in which a plaintiff brings a tort claim despite the existence of a contract.  (The parties assume that Wisconsin law applies to the state law claims, so I have done the same.  *RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."))

The Wisconsin Supreme Court has stated that the economic loss doctrine is "a judicially-created remedies principle that operates generally to preclude contracting parties from

14

pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 23, 270 Wis. 2d 146, 677 N.W.2d 233. The court first applied the doctrine in the context of products liability cases that did not involve personal injury or damage to property apart from the product itself. *E.g., Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 148 Wis. 2d 910, 916, 437 N.W.2d 213, 215 (1989). The general idea behind the doctrine is straightforward and uncontroversial: to prevent dissatisfied buyers from using tort law to recover losses that were or should have been protected against through contract law. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 35, 262 Wis. 2d 32, 662 N.W.2d 652.

Over the years, the Wisconsin Supreme Court has expanded the doctrine to cover many other areas. In doing so, it has struggled in defining the contours of the doctrine, often issuing closely divided or fractured opinions. *E.g., Below v. Norton*, 2008 WI 77, ¶ 23, 310 Wis. 2d 713, 726, 751 N.W.2d 351, 358 (4-3 decision holding that economic loss doctrine applies to "common-law claims for intentional misrepresentation that occur in the context of residential, or noncommercial, real estate transactions"); *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, 308 Wis. 2d 103, 124, 746 N.W.2d 762, 772 (three justices conclude that economic loss doctrine did not apply because contract was predominantly one for services; three conclude that doctrine did apply; one concurs in the result); *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, 293 Wis. 2d 410, 423, 716 N.W.2d 822, 829 (4-3 decision concluding that economic loss doctrine applied because claim involved contract that was "predominantly" a contract for products rather than services); *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 52, 262 Wis.2d 32, 662 N.W.2d 652 (five participating justices split three ways on whether

15

economic loss doctrine provided exception for fraudulent inducement); *Douglas-Hanson Co. v. BF Goodrich Co.*, 2000 WI 22, ¶¶ 1-2, 233 Wis. 2d 276, 607 N.W.2d 621 (on same question, affirming court of appeals without opinion because the six participating justices were evenly split). Perhaps these difficulties were predictable: the economic loss doctrine is not simply a test with a list of factors to be applied by rote but rather a policy determination whether contract law adequately protects against the risks at issue in the case and whether it is more appropriate for the buyer or the seller to bear a particular loss. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 412, 573 N.W.2d 842, 849-50 (1998).

Plaintiffs raise several arguments against application of the economic loss doctrine, with varying success. First, plaintiffs rely on the fact that their case does not involve a claim against "a real estate transferor." Dkt. 78, at 28-29. This is a perplexing argument that plaintiffs do not develop. They observe only that the supreme court has barred claims brought by buyers of real estate against the sellers but not against lenders. Plaintiffs' observation may be technically true, though the court assumed in *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 39, 302 Wis. 2d 41, 68, 734 N.W.2d 855, 869, that the economic loss doctrine could apply in the context of "a contract to lend money." But even if the supreme court has not applied the doctrine in the context of a lending relationship, that would not mean that such relationships are immune from the doctrine's reach. The supreme court has applied the doctrine to a broad array of relationships, both commercial and noncommercial, and it has never suggested that the doctrine is limited to discrete categories of buyers and sellers. The only type of relationship the court has recognized as exempt is one for services, primarily on the ground that service contracts are not protected by the Uniform Commercial Code. *Insurance Co. of North America v. Cease Electric Inc.*, 2004 WI 39,

16

276 Wis. 2d 361, 688 N.W.2d 462.   Plaintiffs do not suggest that such an exception would apply to their dealings with defendants Countrywide and AWL.  *E.g.*, *National Operating, L.P. v. Mutual Life Ins. Co. of New York*, 2001 WI 87, ¶¶ 50-51, 244 Wis. 2d 839, 863, 630 N.W.2d 116, 128 (mortgage loans are security agreements subject to Article 9 of UCC).  *See also Spencer v. DHI Mortgage Co., Ltd.*, 2009 WL 1930161, *3 (E.D. Cal. 2009) (applying economic loss doctrine to dispute about loan);  *Hunter v. Sterling Bank*, 588 F. Supp. 2d 645, 651-52 (E.D. Pa. 2008) (assuming that economic loss doctrine applies to loan contracts).

Plaintiffs' second argument is that the economic loss doctrine does not apply because "[t]he damages sought here resulted from the process, not the product."  Dkt. 78, at 29. Plaintiffs do not cite any authority for their "process versus product" distinction.  In any event, their brief actually undercuts their argument.  They state that their "damages are the entire loan amount because it is unaffordable to" them.  Dkt. 78. at 30.  Thus, they admit that "the product" (the loan) *is* the source of their harm.

Plaintiffs may mean to argue that the economic loss doctrine should not apply because the alleged misrepresentations were not related to the terms of the contract.  If so, that is really just a variation of plaintiffs' third argument, which is that the doctrine should not apply because defendants made intentional misrepresentations before the formation of the contract that were "extraneous to, rather than interwoven with, the contract."  *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 585, 699 N.W.2d 205, 219.  This is known as the fraudulent inducement exception to the economic loss doctrine.  A misrepresentation is "extraneous" to the contract when it "concerns matters whose risk and responsibility did not

relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract.'" *Id.* at ¶ 42.

The supreme court has applied this fraudulent inducement exception on two occasions. In *Kaloti*, at ¶ 45, the court concluded that a cereal company's representation about its marketing strategy was extraneous to a sales contract with a food wholesaler. And in *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 41, 302 Wis. 2d 41, 68, 734 N.W.2d 855, 869, the court concluded that a representation by the defendant that he would not record an option to purchase a parcel of land was extraneous to a contract to secure a loan.

To determine whether this exception may apply, it is first necessary to identify the misrepresentations that plaintiffs attribute to defendants Countrywide and AWL. For this claim, plaintiffs argue that Countrywide and AWL are responsible for not only their own statements, but also the statements of the other defendants because these other defendants were acting as agents of Countrywide and AWL. Thus, plaintiffs say that the following misrepresentations are at issue:

> (1) defendants (through Logemann and 1st Rate) promised plaintiffs that the monthly mortgage payment would be less than $1000;
>
> (2) defendants (by their own actions and through Logemann and 1st Rate) inflated plaintiffs' income on the application form without their knowledge;
>
> (3) defendants (through Logemann and 1st Rate) promised plaintiffs that refinancing would be available the following year;
>
> (4) defendants (through Haun and Boardwalk) knowingly appraised the property at higher than fair market value;
>
> (5) defendants represented to plaintiffs that they qualified for the mortgage;
>
> (6) defendants failed to disclose that one of the mortgages included a prepayment penalty;

(7) defendants failed to disclose that one of the mortgages contained a balloon payment;

(8) defendants failed to "check or confirm" plaintiffs' income before approving the loan.

It is clear that a few of these representations do not fall within the fraudulent inducement exception. Representations (1), (6) and (7) are representations about what the terms of the mortgage loan would be, making it impossible to argue that those representations are extraneous to the loan. Representation (8) is not a misrepresentation at all, but a negligent failure to act. Because the fraudulent inducement exception is limited to allegations of intentional misrepresentation, that one is out as well.

The remaining alleged misrepresentations, however, appear to be extraneous to the contract. Although each of the representations may be related to the loan in the sense that it may have helped induce plaintiffs to accept the loan, none of them "relate[s] to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract." *Kaloti*, 283 Wis. 2d 555, ¶ 42, 699 N.W.2d 205.

## 2. Stating a claim

But this does not mean that plaintiffs are home free. Defendants also challenge plaintiffs' fraud claim on the ground that plaintiffs have failed to plead their claim with particularity under Fed. R. Civ. P. 9. I agree with defendants with respect to representation (5), which is that defendants told plaintiffs they "qualified" for their loan. The problem is that plaintiffs' complaint includes no such allegation. They cite paragraph 35 of their amended complaint as the source of the allegation, but that paragraph says that "[d]efendants told the Zimmermans they were *approved* for mortgage loans, but did not tell them that the approval was based on false

19

income and appraisal information."  Dkt. 28, at 7, ¶ 35 (emphasis added).  Of course, telling plaintiffs that they were approved for a loan was not a misrepresentation.  The omissions plaintiffs identify are addressed more directly by other alleged misrepresentations.

The remaining three misrepresentations were made by defendants Logemann and 1st Rate or defendant Haun and Boardwalk: that Logemann and 1st Rate inflated plaintiffs' income and promised plaintiffs that refinancing would be available the following year and that Haun and Boardwalk knowingly appraised the property at higher than fair market value.  Defendants Countrywide and AWL argue that they cannot be held liable for the other defendants' misrepresentations, but this overlooks plaintiffs' allegations of an agency relationship. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 471 (7th Cir. 1999) ("When an agent who is authorized to make a contract on his principal's behalf (and the principal needn't be the agent's employer and was not here) uses fraud to induce the contract, the principal is liable even if the agent is acting solely to feather his own nest.")

With respect to defendants Logemann and 1st Rate, plaintiffs allege specifically that they were being paid by Countrywide and AWL to originate the loan.  Although plaintiffs do not include similar allegations with respect to Boardwalk and Haun, an agency relationship can be inferred from the circumstances alleged in the complaint.  For example, even a cursory glance at the "comparable" homes the appraisers used to estimate the value of plaintiffs' property shows that the homes are *not* comparable because they are not modular homes, are much larger and in faraway neighborhoods.  These properties are so palpably dissimilar that Countrywide and AWL either were very foolish in accepting the appraisal or they knew it was false and accepted it because they were part of the fraud.  Although defendants may be able to adduce evidence of a

20

third possibility at a later stage of the case, it is reasonable to infer at this point that defendants Logemann, 1st Rate, Haun and Boardwalk were agents of Countrywide and AWL.  Because Countrywide and AWL raise no other arguments related to the sufficiency of plaintiffs' fraud claim against them, I conclude that plaintiffs may proceed with this claim.

### D.  Conspiracy

An allegation of a conspiracy is not so much a separate "claim" as it is a mechanism for holding defendants liable for wrongful conduct.  *Brew City Redevelopment Group, LLC v. Ferchill Group*, 2006 WI 128, ¶ 20 n.5,  297 Wis. 2d 606, 618, 724 N.W.2d 879, 885 (*quoting Singer v. Singer*, 245 Wis. 191, 195, 14 N.W.2d 43 (1944)) ("It is the established law of this state that there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone."); *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 324, 701 N.W.2d 523, 566 (*quoting Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977)) ("To state a cause of action for civil conspiracy, the complaint must allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts.") In this case, the alleged wrongful conduct is the fraud discussed above.  Because I have already concluded that plaintiffs have alleged sufficient facts to support a belief that defendants were acting jointly, it is unnecessary to discuss this theory of liability further.

### E.  Wisconsin Deceptive Trade Practices Act

A party violates the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, when it makes a false representation to "the public" with the intent to induce an obligation and causes

a pecuniary loss to the plaintiff. *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 749 N.W.2d 544. The economic loss doctrine does not apply to claims under Wis. Stat. § 100.18. *Below*, 310 Wis. 2d 713, ¶ 16, 751 N.W.2d 351.

Although the elements of a claim under § 100.18 are not identical to fraud, *Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009), defendants Countrywide and AWL do not raise any arguments with respect to this claim that I did not address on the fraud claim. However, they "adopt" the arguments raised by defendants Haun and Boardwalk, which I will address below.

## II. Boardwalk's and Haun's Motion to Dismiss

Plaintiffs assert three claims against these defendants: (1) fraud (and conspiracy to commit fraud); (2) violations of the Wisconsin Deceptive Trade Practices Act; and (3) violations of Wis. Stat. ch. 458.

### A. Bankruptcy Proceedings

In their opening brief, defendants Haun and Boardwalk argue that plaintiffs' claims against them are barred by a bankruptcy petition plaintiffs filed in December 2008. *In re Zimmerman*, No. 08-16559-rdm (Bankr. W.D. Wis.). In their response brief, plaintiffs point to their amended reorganization plan (approved by the bankruptcy court on August 26, 2009), in which they are granted permission to "pursue . . . legal action against . . . Gretta Haun [and] Boardwalk Realty. . . for any existing cause of action." *See* dkt. 48 & 52 in the bankruptcy case. Haun and Boardwalk do not address this issue in their reply brief, which I construe as a concession that the bankruptcy action does not bar plaintiffs' claims in this court.

22

**B. Fraud and Conspiracy**

Defendants Haun and Boardwalk identify two alleged deficiencies with plaintiffs' fraud claim against them. In their opening brief, Haun and Boardwalk argue that plaintiffs failed to plead fraud with particularity because "Plaintiffs' Amended Complaint alleges fraud against all defendants collectively." Dkt. 52, at 10. In support of this argument, defendants cite the portion of the amended complaint in which plaintiffs summarize their legal theories. Under the heading "Third Cause of Action vs. All Defendants: Fraud," plaintiffs allege that "defendants" committed fraud without specifying the fraudulent acts of each defendant. Am. Cpt. ¶¶ 65-67, dkt. 28.

The problem with this argument is that Haun and Boardwalk overlook the rest of the amended complaint in which the plaintiffs discuss Haun's and Boardwalk's actions individually. It is clear from the narrative in the amended complaint that the basis for plaintiffs' fraud claim against Haun and Boardwalk is their allegedly false appraisal of plaintiffs' property. Again, Haun's and Boardwalk's silence on this issue in their reply brief can be deemed a tacit acknowledgment that the amended complaint is adequate in this respect.

Haun's and Boardwalk's other argument is that plaintiffs' fraud claim against them fails as a matter of law because plaintiffs do not allege that Haun and Boardwalk made any misrepresentations to *plaintiffs*. Rather, Haun's and Boardwalk's statements were directed at the lenders. Even if I assume that defendants' observation is correct, it is not dispositive because the elements of a fraud claim do not require plaintiffs to be the target of the misrepresentation.

In Wisconsin, a claim for intentional misrepresentation requires proof that:

(1) the defendant made a factual representation;

(2) which was untrue;

(3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false;

(4) the defendant made the representation with intent to defraud and to induce another to act upon it; and

(5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Kaloti*, 283 Wis. 2d 555, ¶ 12, 699 N.W.2d 205.

Under these elements, it does not matter whether defendants made a false statement *to* plaintiffs; it only matters whether plaintiffs *relied* on a statement that defendants made to someone else.  Although plaintiffs do not explicitly include allegations of reliance in the amended complaint, their reliance can be reasonably inferred.  *Hoffman v. Stamper*, 385 Md. 1, 31, 867 A.2d 276, 294 (2005) (concluding that, even without specific evidence of reliance, home buyers could prevail on fraud claim against appraiser because plaintiffs "necessarily, even if implicitly, relied on the fact that [the appraiser] had correctly valued the property as at least equal to the contract price" because of important effect that appraisal may have on loan).

Haun's and Boardwalk's arguments about plaintiffs' allegations of conspiracy are the same as those raised by Countrywide and AWL.  I need not address them again.

## C.  Wisconsin Deceptive Trade Practice Act

Haun and Boardwalk raise several arguments regarding this claim, but I need only consider one, which is that plaintiffs have not alleged any facts supporting the element under Wis. Stat. § 100.18 requiring the plaintiff to show that the misrepresentation caused "a

pecuniary loss." *Novell*, 309 Wis. 2d 132, ¶ 49, 749 N.W.2d 544.  In their brief, Haun and

Boardwalk argue the following:

> It is impossible to extract from the Amended Complaint
> any allegation of the requisite pecuniary loss incurred, at least as
> to the allegations against Boardwalk and Haun. Plaintiffs claim
> they were given a bigger loan against their home than the home
> warranted and now cannot refinance. However, they already
> owned the home when they borrowed money in the Fall of 2006
> based upon the September 2006 appraisal from Boardwalk and
> Haun. Amended Complaint at ¶ 19. They already owed $200,000
> on a June 5, 2006 construction mortgage secured against the same
> property. *See id.* at ¶¶ 19-23. Presumably, Plaintiffs received the
> $212,000 in proceeds from the Fall of 2006 loan, *see id.* at ¶ 32,
> paid off the earlier loan and had approximately $12,000 to keep.

Dkt. 52, at 20.

Plaintiffs raise two arguments in response, but neither is helpful.  First, plaintiffs take

issue with defendants' suggestion that plaintiffs made a "profit" on the second loan, but this

misses the point.   The question is not whether plaintiffs' came out ahead on the second loan,

it is whether they suffered a pecuniary loss because of the second loan.   Second, plaintiffs say

that the first loan may have been obtained fraudulently as well.  The problem with this argument

is that plaintiffs do not allege that Boardwalk and Haun (or Countrywide and AWL) had

anything to do with the first loan, so it is not clear how any harm caused by the first loan could

be attributed to those four defendants.  Accordingly, plaintiffs' claim under Wis. Stat. § 100.18

against those defendants must be dismissed.

### D.  Wis. Stat. ch. 458

Chapter 458 of the Wisconsin Statutes imposes various ethical requirements on real

estate appraisers.   Plaintiffs do not disagree with defendants' argument that none of these

requirements create a private right of action; they are enforceable by the Department of Regulation and Licensing only.  Wis. Stat. § 458.26.  Although plaintiffs may be correct that some of the provisions in chapter 458 and the implementing regulations are similar to the requirements under Wis. Stat. § 100.18, this does not mean that plaintiffs can use § 100.18 to enforce chapter 458, as they seem to argue in their brief.  It simply means that two different parts of the Wisconsin code have similar purposes.  This claim must be dismissed.

## III.  Conclusion

The amended complaint must be dismissed with respect to all plaintiffs' claims against defendants Countrywide, AWL, Haun and Boardwalk with the exception of the claims for fraud.[5]  Because some of the deficiencies could be cured with additional allegations, I will give plaintiffs one more opportunity to amend their complaint, taking the holidays into account when setting the new deadlines.

ORDER

It is ORDERED that:

(1)    the motion to dismiss filed by defendants Boardwalk Realty, Inc. and Gretta Haun, dkt. 13, is DENIED as moot;

(2)    the motion to dismiss filed by defendants America's Wholesale Lender and Countrywide Bank, N.A., dkt. 36, is DENIED as moot;

_____

[5] Even the fraud claims would seem to be vulnerable for the same reason that I am dismissing the claims under Wis. Stat. § 100.18, which is that plaintiffs failed to allege a pecuniary harm resulting from these four defendants' actions.  However, I do not consider that question at this time because none of the defendants raised it.

26

(3)     the motion for leave to amend the complaint filed by plaintiffs Patricia and Thomas Zimmerman, dkt. 78, is GRANTED;

(4)     the motion to strike plaintiffs' amended complaint filed by defendants Boardwalk and Haun, dkt. 49, is DENIED;

(5)     the motion to strike plaintiffs' amended complaint, or, in the alternative to dismiss, filed by defendant 1st Rate Mortgage Corp., dkt. 58, is DENIED as moot;

(6)     the motion to strike plaintiffs' amended complaint filed by defendants America's Wholesale Lender and Countrywide Bank, dkt. 61, is DENIED as moot;

(7)     the motion to dismiss plaintiffs' amended complaint filed by defendants America's Wholesale Lender and Countrywide Bank, dkt. 60, is DENIED as to plaintiffs' claims that these defendants committed fraud–either alone or as part of a conspiracy–by inflating plaintiffs' income on the loan application form; by promising plaintiffs that refinancing would be available the following year; and by knowingly appraising the property at higher than fair market value.  The motion to dismiss is GRANTED in all other respects;

(8)     the motion to dismiss filed by defendants Boardwalk and Haun, dkt. 51, is DENIED with respect to plaintiffs' claims that these defendants committed fraud, either alone or as part of a conspiracy, by knowingly appraising the property at higher than fair market value. The motion is GRANTED in all other respects;

(9)     Plaintiffs may have until December 21, 2009 to file an amended complaint addressing the deficiencies identified in this opinion. Defendants may have until January 11, 2010 to file any new motions to dismiss.

(10)   The clerk of court is direct to schedule a preliminary pretrial conference for late January, 2010.

Entered this 30th day of November, 2009.

> BY THE COURT:
>
> /s/
>
> STEPHEN L. CROCKER
> Magistrate Judge