UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

THOMAS ZIMMERMAN and
PATRICIA ZIMMERMAN,

                    Plaintiffs,                        **Case No.  09-cv-210**

     v.

GREG LOGEMANN, et al.

                    Defendants.

**COUNTRYWIDE BANK, N.A.'S AND AMERICA'S WHOLESALE LENDER'S BRIEF IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**

> Please produce a corporate designee prepared to testify as to "Any error or mistake committed by CW/AWL or any other defendant in connection with the Zimmermans, the loan or mortgage or any aspect of the transaction."  (Plaintiffs' 30(b)(6) Notice, ¶ 25).

## INTRODUCTION

The above-quoted 30(b)(6) topic from Plaintiffs is illustrative of why a protective order is needed.  This case involves a $212,000.00 refinance Thomas and Patricia Zimmerman (the "Plaintiffs") obtained from Defendants Countrywide and America's Wholesale Lender (collectively "Countrywide") in October of 2006.  Despite the amount in controversy, to date, all Defendants have collectively been forced to respond to three complaints (amended twice), hundreds of discovery requests issued by the Plaintiffs and have participated in many hours of depositions with questionable focus points for examination of potentially relevant evidence.

Plaintiffs' 30(b)(6) deposition notice, with 34 topics, was served 8 days before a deposition Countrywide had agreed upon more than a month prior.  Countrywide objected to the topics, but agreed to produce an underwriting designee on the agreed date, and the parties

stipulated to defer on the remaining topics and determine after mediation if a resolution of the dispute could occur.

Plaintiffs' requested deposition topics are intended to harass Countrywide, run up the costs of litigation and delay the ultimate resolution of this dispute. The Zimmermans have lived in the home more than two years without paying their loan obligations already. The requests are also too generic, vague, unspecified and lacking any specificity to satisfy the legal requirements for a 30(b)(6) topic. Countrywide is entitled to protection from such improper use of the discovery process involving overly generic, vague, burdensome topics – none of which have any bearing on the issues in this case. Countrywide moves the Court for entry of its Proposed Protective Order, pursuant to Fed. R. Civ. P. 26(c), quashing the remainder of Plaintiffs' 30(b)(6) Deposition Notice.

## BACKGROUND

**A.      The Plaintiffs' allegations relate to a narrow set of legal theories.**

In 2006, the Plaintiffs hired a mortgage broker, Greg Logemann, to secure a construction loan they intended to use to build a modular home. *See* Declaration of John R. Remington ("Remington Decl."), ¶ 2, Exh. A at pp. 35, 54, 257. Pursuant to his contractual agreement with the Plaintiffs, Logemann obtained a construction loan on the Plaintiffs' behalf with a bank not a party to this lawsuit. *Id.; See also* Remington Decl. ¶¶ 3 and 4, Exh. B and C.

At the Plaintiffs' request, Logemann applied for refinancing with Countrywide (the "October 2006 loan") and obtained a conditional loan approval. *See* Remington Decl. ¶ 2, Exh. A at p. 257. Countrywide finalized its underwriting decision, obtained an appraisal from an entity not a party to this suit, and gave final approval to two notes for the Zimmermans. *See* Remington Decl. ¶ 13, Exh. K at pp. 256-257. The Zimmermans knew the payment terms and before closing accepted the refinance because they could not afford the balloon payment coming

2

due on their loan with another lender. *See* Dkt. No. 90, ¶ 38.  Countrywide retained Terri Oswald and Tri-County Title and Abstract to close the loan.  *See* Remington Decl. ¶ 5, Exh. D.  The loan closed on October 26, 2006.  *Id.*

In April of 2009, the Plaintiffs initiated the present lawsuit seeking damages, rescission of the loan and attorneys fees as a result of alleged misrepresentations and disclosures made to them in connection with the October 2006 loan.  *See* Dkt. #1.  After a series of motions and amended pleadings, the Court limited the Plaintiffs' fraud, conspiracy and Wisconsin Statute § 100.18 claims to the following alleged misrepresentations pursuant to the economic loss doctrine:

(1)     inflated income for the Zimmermans on the loan application prepared by the broker,

(2)     a promise of future refinancing by the broker, and

(3)     a falsely inflated appraisal of property by the broker and defendants Haun and Boardwalk.

(Dkt. #89 at 18).

Plaintiffs Second Amended Complaint introduced one additional alleged basis for the fraud claims other than those addressed by the Court in his Order:  that Countrywide and AWL misrepresented AWL's status and that the Zimmermans "would not have agreed to enter into the loan if America's Wholesale Lender had truthfully and accurately represented its status."  *See* Dkt. #90 at ¶ 17.

It cannot be understated that the rescission claim and the four alleged misstatements are the only claims giving rise to any liability in this suit to Countrywide, and that it is undisputed Countrywide never spoke with the Zimmermans at any time.  The requested discovery would

require a tremendous undertaking of time, manpower and expense to prepare witness(es) as a representative(s), and not justified by the amount in controversy.  As to some requests, no amount of time would be sufficient to prepare because they are too broad.  Some are impossible for anyone to prepare because they are too generic or call for legal conclusions.  And still others provide nothing remotely related to the discovery of admissible evidence on the remaining claims.  Still others relate to information either already received from third parties or should be received from third parties.  There is no credible basis for the requested discovery.

**B.     The parties have made a good faith effort to resolve the present discovery dispute before seeking Court intervention.**

Already in discovery, Countrywide produced nearly 900 pages of documents including its entire loan file and the relevant underwriting documents.  *See* Remington Decl. ¶ 7.

Discovery was stayed temporarily due to a request from Plaintiffs' counsel.  *Id*. at ¶ 6.  An underwriting corporate designee was sought by Plaintiffs from Countrywide.  Countrywide agreed to produce such an individual.  Pursuant to Fed. R. Civ. Pro. 30(b)(6), on September 27, 2010, counsel for Countrywide notified all counsel of record that it would provide by Stipulation a "designee on underwriting" available for deposition on November 16, 2010.  *See* Remington Aff. at ¶ 8, Exh. F.  On October 5, 2010, Plaintiffs' counsel confirmed that she would depose Countrywide's designee on underwriting on that date.  *Id*. at ¶ 9, Exh. G.

On November 8, 2010 -- <u>over one month after the deposition was scheduled</u>, and only 8 days before the deposition -- the Plaintiffs sent to Countrywide their 30(b)(6) Deposition Notice outlining <u>34</u> separate topics for examination (the "Notice").  *Id*. at ¶ 10, Exh. H.  In light of the impossibility of complying with the Notice by November 16, 2010, on November 8, 2010, Countrywide's counsel objected to the Notice and proposed the following plan to which the Plaintiffs' counsel agreed:

4

1.   The deposition of Countrywide's designee for underwriting, Barry Weisman, would remain on calendar for November 16, 2010 and Countrywide would identify all topics upon which Weisman would testify as the corporate designee.

2.   After Weisman's deposition concluded, the parties would meet and confer regarding any remaining topics.

3.   In the event that there are additional disputes after # 1 and # 2, the parties would seek guidance from the Court.

*Id*. at ¶ 11, Exh. I.  Following this agreement, Countrywide designated Weisman as the corporate designee for topics 1, 4, 5(a) and (b), part of 6, 10, 18, 20, 31, 32, 33 and 34.  *Id*. at ¶ 12, Exh. J.  Simultaneously, Countrywide reiterated its objection to the scope of the Notice.  *Id*.

On November 16, 2010, Plaintiffs' counsel deposed Weisman beyond the permitted seven hours by agreement of parties to complete it without need of judicial involvement.  *Id*. at ¶ 13, Exh. K.  During the deposition, counsel for Countrywide set forth on the record the limited scope of Weisman's designation pursuant to the Notice.  *Id*. at p. 6.

On November 23, 2010, the parties attempted to resolve the topics outlined in the Notice not addressed by the Weisman deposition.  *Id*. at ¶ 14, Exh. L.  The parties were unable to reach an agreement.  *Id*.  On November 30, the parties attended a settlement conference and agreed to defer the discovery issue until after that conference, which was ultimately unsuccessful.  A final meet and confer took place the same date as the filing of this motion.  (*Id*. at ¶ 22).  With summary judgment motions due January 3, 2011, this issue must be resolved by the Court.

Countrywide has produced the Zimmermans' loan file in its entirety.  *Id*. at ¶ 7.  It has produced its corporate designee as to underwriting.  *Id*.  The remainder of topics requested by Plaintiffs are too generic, unreasonable, unduly burdensome, and have absolutely nothing to do with the claims Plaintiffs assert against Countrywide.

## ARGUMENT

### A.      Legal Standard

District courts have broad discretion in supervising pretrial discovery. *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 36 (1984); *See also Olivieri v. Rodriguez,* 122 F.3d 406, 409 (7th Cir. 1997). Courts may issue protective orders limiting or forbidding discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In considering a motion for a protective order, judges must "compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied." *Marrese v. Am. Acad. Ortho. Surgeons,* 726 F.2d 1150, 1159 (7th Cir. 1984) (en banc), *rev'd on other grounds,* 470 U.S. 373 (1985). Thus, in cases where the party seeking discovery suffers no hardship if the request is denied, courts should not require entities to suffer the burden of discovery. *See e.g. Stagman v. Ryan,* 176 F.3d 986, 994 (7th Cir. 1999) (affirming trial court's decision to deny deposition request when deposition would have "serve[d] no useful purpose").

Further, a court must limit discovery when the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy and the importance of the proposed discovery in resolving issues. Fed. R. Civ. Pro. 26(b)(2)(C)(i)-(iii); *See also* 6 Moore's Federal Practice, § 26.60[5] (Matthew Bender 3d ed.); Wright, Miller & Marcus, Fed. Pract. Pro. Civil 3d § 2008.1 ("Judges relatively frequently limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in producing evidence."). Additionally, the sheer magnitude of a discovery request may be enough to tip the scales in favor of limiting discovery. *See* 6 Moore's, § 26.60[5]; *See also Coleman v. American Red Cross,* 23 F.3d 1091, 1098 (6th Cir. 1994) (limiting discovery which would have required a search of all of the defendant's files).

6

**B.**     **Countrywide is entitled to protection from the Plaintiffs' unduly burdensome and improper 30(b)(6) Deposition Notice.**

A protective order is particularly appropriate when a party propounds a mass of exceedingly broad topics in a Rule 30(b)(6) notice.  *See e.g. Krasney v. Nationwide Mut. Ins. Co.*, No. 3:06 CV 1164 (JBA), 2007 U.S. Dist. LEXIS 90876, (D. Conn. Dec. 11, 2007) ("Contrary to plaintiffs' assertions, these forty topics are hardly described with reasonable particularity, as required by Rule 30(b)(6).  Under similar circumstances, federal judges have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) Notices.") (compiling cases);  *See also State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc*., 254 F.R.D. 227 (E.D. Pa. 2008) (limiting topics of deposition and documents to be produced pursuant to deposition notice).

Further, Rule 30(b)(6) requires the requesting party to designate, with painstaking specificity, the particular topics that are intended to be questioned, and that are relevant to the issues in dispute.  Fed. R. Civ. P. 36(b)(6); *See also Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 638 (D. Minn. 2000) (cited with approval in *Kalis v. Colgate-Palmolive Co.,* 231 F.3d 1049, 1058, n. 5 (7th Cir. 2000)) (emphasis added).  At the very least, the topics outlined in a 30(b)(6) notice must be specific enough to allow the entity to "reasonably prepare a witness to testify."  *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group,* No. 05-C-985, 2007 WL 601837, at *3 (E.D. Wis. Feb. 23, 2007).

**1.**     **The topics in the Plaintiffs' Notice are not stated with the required particularity.**

Courts have specifically found that topics requesting "all evidence" supporting a particular claim or defense violate the reasonable particularity requirement imposed by Rule 30(b)(6).  *See Promega Corp. v. Applera Corp.,* No. 01-C-244-C, 2002 WL 32340886, at *4 (W.D. Wis. Nov. 27, 2002) (Crabb, J.) (characterizing the topic, "information contained in the

Applera sales database(s) produced by Applera in this lawsuit" as "too generic"); *Kimberly-Clark Corp.,* 2007 WL 601837, at *3.

Several of the topics in the Plaintiffs' Notice are insufficiently defined to permit Countrywide to adequately educate and prepare a witness to testify and should therefore be quashed as improper.  For example, through their Notice, the Plaintiffs seek discovery of **all** communications between **any** employee of CW/AWL and the Plaintiffs, Greg Logemann, 1st Rate Mortgage Corp., Gretta Haun, Boardwalk Realty, Inc., Tri-County Title & Abstract, LLC, Terri Oswald, or any other individual regarding the Plaintiff's credit application or the "entire transaction."  *See* 30(b)(6) Notice at ¶¶ 2, 3 and 7.  Such broad and all encompassing requests are exactly the kind this court has rejected as too generic and should do so again in this case.[1]

2.      **The requested topics are overly broad and not relevant to the Plaintiffs' claims.**

Although the scope of discovery under Rule 26(b)(1) of the Federal Rules of Civil Procedure is broad, the Rule specifically provides that discovery must be relevant to a *claim* or *defense* of a party.  *See Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964) *cert. denied* 379 U.S. 965, 85 S. Ct. 659 (1965) ("Full and complete discovery should be practiced and allowed, but its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered.").

The Plaintiffs have asserted claims of common law fraud and conspiracy and violations of Wisconsin Statute §100.18 and the Truth in Lending Act (TILA).  Dkt. # 90.  The fraud, conspiracy and Wis. Stat. §100.18 claims rely upon four alleged misrepresentations made during

---

[1] Countrywide has already produced the names of all "participant" employees involved in said communications, none of whom are still employed by Countrywide.  Rule 30(b)(6) does not contemplate a requiring the designee to initiate contact with former employees particularly if the information they may possess may be discerned from documents or other sources, in this instance, all business records maintained in the Zimmerman loan file.  *See U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996);  *See also* Fed. R. Civ. Pro. 26(b)(2)(C)(i).

the application process of the October 2006 loan.  *Id*. at ¶75; Dkt. # 89 at 18.  Furthermore, the Plaintiffs' rescission claim relies entirely on the disclosures allegedly provided at the closing of the October 2006 loan.  Dkt. # 90. at ¶¶95-102.

Despite the narrow temporal and factual scope of the Plaintiffs' claims, they seek testimony on all inquiries, investigations, complaints and lawsuits brought against Countrywide in 2006 regarding its lending practices and its procedures for receiving, recording, communicating and dealing with such complaints.  *See* Remington Decl. ¶ 16, Exh. N at ¶¶ 9 (a)-(c).  Countrywide's lending practices are not relevant to the Plaintiffs' misrepresentation or TILA rescission claims.  Does Plaintiff intend to conduct a mini-trial as to every complaint Countrywide ever received at any time, anywhere in the country on any topic?  And how would an alleged RESPA error in Texas in 1999 have any impact on whether the Zimmermans in fact received the federal disclosures at issue here?  Plaintiffs' request improperly attempts to put Countrywide's lending practices on trial to annoy, embarrass and oppress Countrywide and run up the cost of the litigation.

Several of the other topics in Plaintiffs' 30(b)(6) Notice likewise have no relevance to their claims.  For instance, the Plaintiffs ask Countrywide to produce a corporate designee to testify about the relationship between itself and any of the other Defendants.  *Id*. at ¶¶ 12, 26.  The broker admits he hired Boardwalk Realty, not Countrywide, for the Zimmerman appraisal.  *See* Remington Decl. ¶ 18.  Countrywide already produced the closing instructions creating the contractual relationship between itself, Tri-County and Terri Oswald.  *See* Remington Decl. ¶ 7.  Ms. Oswald was deposed at length on this subject.  *See e.g.* Remington Decl. ¶ 19, Exh. P at p. 237.  The relationship between Countrywide and the broker has already been adduced from the testimony of Logemann, (*See* Remington Decl. ¶ 18, Exh. O at pp. 11-13), and as evidenced by

9

Countrywide's summary judgment motion, establishes no agency relationship. There is no contract in Countrywide's possession between 1st Rate and Countrywide. *See* Remington Decl. ¶ 20, Exh. R. And the contract the Zimmermans signed with Logemann expressly states that Logemann and 1st Rate would have been acting as an independent contractor as to Countrywide. *See* Remington Decl. ¶ 3. There can be no other logical use for this information in this case and Countrywide would be significantly burdened by having to invest the required resources to respond.

Similarly, Plaintiffs' request for testimony regarding each and every assignment, negotiation, or transfer of any interest in their notes and mortgages including any Pooling and Servicing Agreements governing such interests should be quashed (*See* Remington Decl. ¶ 16, Exh. N at ¶¶ 21, 23, 24), as should their request for information on Countrywide's requirements for doing business with and "watch" lists for third parties such as appraisers, mortgage brokers and title companies. *Id*. at ¶¶ 13-16. This information has no bearing on the Plaintiffs' misrepresentation or TILA rescission claims. Countrywide has not sued in this case under the notes, and they have already supplied documentation confirming who owns the mortgages. Similarly, Countrywide's watch lists in 2006 are completely irrelevant to the Plaintiffs' claims. The amount of time and expense to review and locate this information is not warranted.

Plaintiff's discovery requests appear to be verbatim copies of model discovery requests from a popular Consumer Advocacy Treatise designed to cover a wide variety of claims not applicable to the case at bar. *See* Remington Decl. ¶ 20, Exh. Q. These form requests have no direct relationship to the issues raised in this specific case, and Plaintiffs cannot articulate any such relationship. The same reasoning supports quashing the following other requests for irrelevant information:

- Countrywide's legal compliance procedures and practices in place since January 2006 including records regarding compliance by third parties. *See* Remington Decl. ¶ 16, Exh. N at ¶¶ 8, (a)-(d), 11, 17, 28, 29.

- The development, content, operation, use of and problems with Countrywide's computer system in 2006. *Id*. at ¶ 19.

- Rate sheets for home mortgage loans from May 1, 2006 through December 31, 2006. *Id*. at ¶ 30.

Locating and producing this information from 2006 would be expensive and time consuming. But equally as important, it does not relate to the rescission claim in any way, nor to any of the purported fraud claims this Court found survived the economic loss doctrine including Plaintiffs' misrepresentations of income on their loan application, promised refinancing, inflated appraisal, or use of a trade name.

### 3. Several topics in the Notice are wholly improper for a 30(b)(6) deposition.

Topics that seek "legal conclusions" or require understanding of complex legal concepts are generally improper 30(b)(6) topics. *See Studio & Partners v. KI*, Case No. 06-C-0628, 2008 WL 426496, at *4 (E.D. Wis. Feb. 14, 2008) (discovery not appropriate on "straightforward legal question"). Therefore, a party may properly seek a protective order as to a 30(b)(6) deposition notice on the grounds that the information sought is more properly sought through contention interrogatories. *Alloc, Inc. v. Unilin Decor N.V.,* No. 02-C-1266, *et al.,* 2006 WL 2527656, at *1 (E.D. Wis. Aug. 29, 2006).

Furthermore, a party cannot be forced, through discovery, to disclose how it intends to marshal its facts, documents and testimonial evidence. *SEC v. Buntrock,* 217 F.R.D. 441, 445 (N.D. Ill. 2003); *In re Indep. Serv. Org. Antitrust Litig.,* 168 F.R.D. 651, 654 (D. Kan. 1996).

11

Even if a party is entitled to such discovery, an attempt "to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable." *Id.* at 654 (citing *United States v. District Council of New York City,* No. 90 Civ 5722 (CSH), 1992 WL 208285, at *15 (S.D.N.Y. Aug. 18, 1992)). "It also implicates serious privilege concerns and potential problems with confidential information ...." *Id.*

Despite these common sense tenets of discovery, Plaintiffs seek testimony on "Any error or mistake committed by CW/AWL or any other Defendant in connection with the Zimmermans, the loan or mortgage, or any aspect of the transaction." *See* Remington Decl. ¶ 16, Exh. N at ¶ 25. The law does not require Countrywide to prepare a corporate designee to testify on this topic. And how would Countrywide instruct the designee to prepare without violating the attorney-client and work product privileges? Plaintiffs' demand that Countrywide respond to such a preposterous request should be rejected.

Finally, Plaintiffs improperly seek corporate designee testimony on topics upon which Countrywide cannot be expected to have knowledge. *See* 7 Moore's Federal Practice, § 30.25 [3] (Matthew Bender 3d ed.) (quoting Fed. R. Civ. Pro. 30(b)(6) requiring the designee only to testify about "information **known** or **reasonably** available to the organization") (emphasis added). First, and most egregious, Plaintiffs seek information on "any documents that were in CW/AWL's possession at one time but are no longer." *See* Remington Decl. ¶ 16, Exh. N at ¶ 5 (d). This topical request is a *non-sequitur* – how could anyone reasonably expect to comply with such a request? Similarly, Plaintiffs persist in requesting a corporate designee to testify regarding notes handwritten on various documents several years ago from employees no longer

12

with Countrywide.  *Id.* at ¶ 5 (c).[2]  Countrywide cannot logically respond to such unreasonable requests and therefore asks that they be quashed.

**C.    Plaintiffs have already deposed Countrywide's 30(b)(6) designee as to underwriting of the Zimmermans' loans in excess of seven hours.  Additional deposition and requested documentation relating to underwriting is unduly burdensome and intended for an inappropriate purpose.**

Countrywide is filing its motion for summary judgment simultaneously with its motion for protective order.  The summary judgment motion establishes that none of Plaintiffs' claims survive summary judgment based upon the undisputed facts and law.  Simply put, whatever claims for fraud and conspiracy Plaintiffs wish to seek against other parties, those claims cannot be imputed to Countrywide under any theory.  The Zimmermans had already purchased the home and had a construction loan with a different bank before Countrywide ever refinanced their obligations.  Thus, anything Countrywide did or did not do is inapplicable to Plaintiffs' damages asserted in this case – there could be no reliance on misrepresenting the Zimmerman's ability to afford the home as a result of anything Countrywide did or did not do.  They had already purchased the home before Countrywide agreed to refinance it.  Yet Plaintiffs demand hundreds of pages of additional documents and presumably another day deposing Countrywide's designee.  To what end?  Plaintiffs cannot provide any basis of what evidence they hope to adduce could related to the fraud theories alleged.

As an accommodation to the Plaintiffs in an attempt to avoid using this Court's limited resources to resolve this discovery dispute, Countrywide's counsel agreed to permit Plaintiff to continue their examination of Countrywide's underwriting designee beyond the federal limit of seven hours.  The vast majority of the examination was not related to any of the fraud claim at issue.  Additionally, certain loan underwriting information was provided to the Plaintiffs.

---

[2] Note that Weisman already testified on behalf of Countrywide that Countrywide does not know who wrote the notes.  *See* Remington Decl. ¶ 13, Exh. K, pp. 177, 201.

The Zimmermans admit they knew Countrywide's payment terms before signing the notes and agreed to those because they needed to pay off the upcoming balloon payment owed on the construction of their home that they could not afford.  Second Amended Complaint, Dkt. #90, ¶¶38, 52, 80).   As explained in greater detail in the motion for summary judgment, allegations of fraud in inducing the Zimmermans to sign the notes based on income information, the appraisal, and an alleged promise of oral refinancing by the broker cannot create any rational basis for a jury trial against Countrywide.  Plaintiffs have not articulated any cognizable basis as to why additional discovery from the underwriter has any rational nexus to the claims that are at issue in this case.  Nor have they identified any credible explanation as to how any of the requested discovery relates to pursuing or defending the claims in this case.

The Zimmermans are in bankruptcy.  They have already lived in the home for years without paying anything under their loan obligations.  And the delay towards final resolution continues.  Plaintiffs' counsel has, through inappropriate discovery tactics, caused all the parties to incur a significant amount of unreasonable costs in this dispute through discovery.  Discovery has not been narrowly tailored.  Discovery has not been reasonably calculated to lead to the discovery of any admissible evidence.  There have been multiple extensions and delays and amendments to pleadings by Plaintiffs in this case, and Countrywide anticipates Plaintiffs will oppose summary judgment on the undisputed facts under the guise of requiring additional discovery.  Yet they fail to establish how the discovery will change the fact the Zimmermans bought a home they could not afford using money from a bank not a party to this suit.  That fact alone removes any reasonable reliance theory as to Countrywide's refinance months after they had already purchased the home, moved into it, and had a balloon payment looming that they could not afford.

There is no legal justification or necessity for a second day of testimony relating to the underwriting expert. Nor is there any rational basis as to why additional underwriting documentation should be provided. The Court should enter a protective order quashing any further discovery as to underwriting as well.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

The costs involved to date in this rescission claim, with limited fraud allegations surviving the economic loss doctrine, have been staggering. Countrywide filed its motion for summary judgment dismissing all claims asserted against it simultaneously with this Motion because it further establishes the fallacies of any potential discovery altering the ultimate legal conclusion: <u>None</u> of Plaintiffs claims against Countrywide can survive summary judgment, and no additional discovery will alter that inevitable conclusion.

The law is clear that Logemann, as an independent broker, could not bind Countrywide. His testimony confirms this fact. The underwriting and approval of the loans also confirm this fact.

Boardwalk and Haun have already sought summary judgment because it is undisputed Countrywide used a different appraisal, from a party not joined in this suit, when offering refinancing to the Zimmermans. All efforts for additional discovery do not relate to the claims at issue based on the facts and procedural status of this case. They are outrageously overbroad and intended to run up the costs for purposes not relevant to proving Plaintiffs' allegations.

Plaintiffs have no evidence to support an agency relationship to impute the broker's alleged misconduct to Countrywide. Nothing they seek is even related to supporting such an agency relationship nor the TILA rescission claim. Plaintiffs have the loan file, and the underwriting testimony relating to these loans. They have already undertaken a lengthy examination on an underwriting designee. While discovery is liberally construed, there are

15

QB\133032.00013\11775587.2

limits.   The requested discovery seeks to abuse the privileges afforded by the federal rules governing discovery.   Enough is enough – the remainder of Plaintiffs' 30(b)(6) notice is unreasonable as a matter of law, and a protective order should be granted.

Dated this 9th day of December, 2010.

QUARLES & BRADY LLP

/s/ John R. Remington
Matthew J. Flynn          (1015090)
David P. Muth             (1027027)
Katherine Maloney Perhach  (1035975)
John R. Remington         (1066195)
411 East Wisconsin Avenue
Milwaukee, Wisconsin  53202
Telephone:  (414) 277-3087
Facsimile:  (414) 978-8897
Email: matthew.flynn@quarles.com
david.muth@quarles.com
katherine.perhach@quarles.com
john.remington@quarles.com

*Attorneys for Defendants Bank of America N.A. (as successor to Countrywide Bank, F.S.B. f/k/a Countrywide Bank, N.A.) and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender*

16